UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ROBERTA CAMPBELL,                          :

                 Plaintiff,     :

       -against-                            :

MARK HOTEL SPONSOR, LLC,                    :

               Defendant.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

09 Civ. 9644 (WHP)

MEMORANDUM & ORDER

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/3/2010
```

        Plaintiff Roberta Campbell ("Campbell") brings this breach of contract action against Defendant Mark Hotel Sponsor, LLC (the "Co-Op Sponsor" or "Sponsor") to recover her down payment of $4.68 million on a cooperative apartment she alleges was uninhabitable. The Co-Op Sponsor moves to dismiss Campbell's Complaint for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, the Co-Op Sponsor's motion is granted in part and denied in part.

## BACKGROUND

        Campbell is a resident of California who entered into a contract with the Co-Op Sponsor to purchase a luxury apartment at The Mark Hotel on Manhattan's Upper East Side. (Complaint dated Nov. 10, 2009 ("Compl.") ¶¶ 1, 5-6, 8.) The Co-Op Sponsor is a New York limited-liability entity and the sponsor of the cooperative-corporation offering plan (the "Offering Plan") for The Mark Hotel. (Compl. ¶¶ 6-7.)

-1-

I.   The Suite, Offering Plan, & Purchase Agreement

Beginning in January 2007, The Mark Hotel underwent renovations to convert

from a hotel to a dual-use hotel and cooperative apartment complex.  See Mark Hotel LLC v.

Madison Seventy-Seventh LLC, 61 A.D.3d 140, 141-42 (1st Dep't 2009).  On January 11, 2008,

the Co-Op Sponsor offered forty-two luxury apartments at The Mark Hotel for sale to the public.

(Compl. ¶ 8.)  The apartments ranged in price from approximately $2 million to $60 million.

(Compl. ¶ 9.)  In the Offering Plan, the Co-Op Sponsor represented that cooperative membership

included a range of services, including a doorman, concierge, passenger elevator, package room,

and fitness center.  (Compl. ¶ 10; Defendant's Notice of Motion ("Def. Mot.") Ex. C: Leasehold

Cooperative Offering Plan for The Mark Hotel Owners Corp. dated Jan. 11, 2008 ("Offering

Plan") at 17-20.)  The Offering Plan also provides:

> Although Sponsor anticipates many of the services described
> above will be available at the time of the First Closing, prospective
> purchasers should note that some of these services may not be
> available until the later of: (i) twelve months after the First
> Closing; or (ii) the closing of title to an occupancy of at least 50%
> of the Suites. . . . However, it is anticipated that at all times after
> the First Closing . . . the lobby will be attended 24 hours per day,
> seven days per week, and there will be at least one elevator
> servicing every floor on which there are occupied Suites. . . .
> Purchasers are also advised that . . . various systems, including, but
> not limited to, water supply, electric, heating, cooling, ventilating
> and elevators, may be incomplete and may be disrupted
> temporarily and from time to time.

(Offering Plan at 20.)

On January 17, 2008, Campbell entered into a Purchase Agreement for the

proprietary lease to and shares for Suite No. 1402 at The Mark Hotel (the "Suite").  (Compl. ¶

12.)  The purchase price for the Suite was $18.75 million.  (Compl. ¶ 12.)  On January 28 and

-2-

May 19, 2008, Campbell made initial deposits of $2.812 million and $1.875 million,

respectively.  (Compl. ¶ 13.)  Pursuant to Section 3.2 of the Purchase Agreement, Campbell's

deposits were placed in escrow with the law firm of Kramer, Levin, Naftalis & Frankel, LLP.

   The Purchase Agreement incorporates the Offering Plan.  (Def. Mot. Ex. A:

Purchase Agreement for Suite No. 1402 dated Jan. 18, 2008 ("Purchase Agreement") §§ 10.2-

10.3.)  Any inconsistencies between the Purchase Agreement and the Offering Plan are resolved

by reference to the Offering Plan.  (Purchase Agreement § 10.2.)  The Purchase Agreement gave

the Co-Op Sponsor the authority to schedule and adjourn the closing date (the "Closing") for the

Suite.  (Compl. ¶ 16; Purchase Agreement § 5.1.)  Campbell had the right to one adjournment of

the Closing.  The Purchase Agreement specified:

> Purchaser shall be obligated to close . . . once a temporary or
> permanent Certificate of Occupancy is issued for the Suite
> (notwithstanding any construction items noted on Purchaser's
> Inspection Statement . . . remaining for Sponsor to complete and/or
> correct in accordance with its obligations under the Plan, and
> notwithstanding the incomplete construction and/or decoration of
> any other portions of the Building not preventing Purchaser's
> occupancy of the Suite).

(Purchase Agreement § 16.3.)  Campbell also had the right to an inspection one week prior to

Closing, at which time she could make notes about the Suite's deficiencies on an Inspection

Statement.  (Purchase Agreement § 17.)

   Under the Offering Plan, a purchaser who did not close by the required date had

thirty days to cure the default or the Co-Op Sponsor could cancel the Purchase Agreement and

"retain as liquidated damages the Deposit made by the Purchaser."  (Offering Plan at 66-67.)

The Offering Plan also provided that if the Co-Op Sponsor did not close on at least one unit prior

to May 1, 2009, it was required to offer rescission to all purchasers.  (Compl. ¶ 37.)

II. The Present Dispute

By letter dated February 26, 2009, the Co-Op Sponsor scheduled the Closing of Campbell's Suite for March 31, 2009. (Compl. ¶ 17.) On March 25, 2009, Sponsor rescheduled the Closing for April 7. (Compl. ¶ 19.) On April 2, 2009, Sponsor again adjourned the Closing until April 16. (Compl. ¶ 20.)

On April 13, 2009, the New York City Department of Buildings issued a Temporary Certificate of Occupancy for the fifth, ninth, thirteenth, and fourteenth floors of The Mark Hotel. (Def. Mot. Ex. E: Certificate of Occupancy No. 104656294T001 dated Apr. 13 to Jul. 12, 2009 ("TCO") at *1-2.)

On April 15, 2009, Campbell inspected the Suite and executed the Inspection Statement. (Compl. ¶¶ 22-23, 29.) During this inspection, Campbell discovered substantial defects in the Suite which made it unsuitable for permanent occupancy. (Compl. ¶¶ 25, 29.) The alleged deficiencies included no heating or ventilation, no hot water, an improperly functioning elevator, unfinished floors, and unfinished bathrooms. (Compl. ¶ 30.) Campbell also alleges that when her companion tried to use the elevator, he waited at least twenty minutes for the cab. (Compl. ¶ 31.) Moreover, most of the hotel services included under the Offering Plan were not available—there was no doorman, hotel staff, refuse disposal, or package room. (Compl. ¶ 32.) And, some of the hotel entrances were unmonitored. (Compl. ¶¶ 32-33.)

Thereafter, Campbell requested assurances from the Co-Op Sponsor about the financial viability of the project. When the Co-Op Sponsor refused to provide them, Campbell adjourned the Closing until May 11, 2009 and requested another inspection, which the Co-Op Sponsor also denied. (Compl. ¶¶ 34-36, 39-40.)

-4-

Campbell did not close May 11, but applied to the New York State Attorney General for the return of her escrowed deposit. (Compl. ¶ 42; Def. Mot. Ex. J: Application to the Attorney General for a Determination on the Disposition of Down Payments dated May 8, 2009.) On June 15, 2009, Sponsor declared Campbell in default, terminated the Purchase Agreement, and asserted a claim to her $4.687 million deposit. (Compl. ¶ 43.)

Campbell commenced this action on November 10, 2009. The first, second, and fourth claims in her Complaint allege that Sponsor materially breached the Purchase Agreement by failing to have the Suite in a habitable condition on the scheduled April 16, 2009 closing date, failing to obtain a permanent certificate of occupancy, refusing a second inspection, and refusing to give assurances at the end of April 2009. Campbell's third claim for relief asserts that Sponsor engaged in "sham and collusory" closings to meet the May 1, 2009 deadline in the Offering Plan. On December 9, 2009, the State Attorney General issued a decision deferring adjudication of the escrow matter, pending resolution of this civil action. (Def. Mot. Ex. O: Letter form Escrow Dispute Intake Coordinator to Richard Cohen dated Dec. 9, 2009.)

## DISCUSSION

### I. Legal Standard

On a motion to dismiss, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 540 U.S. 544, 556 (2007)

(plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 555 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct at 1949 (citation omitted). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

Where the allegations in a complaint sound in fraud, courts apply the heightened pleading standard set out in Fed. R. Civ. P. 9(b). See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud . . . but [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, the allegations should "(1) specify the statements [which] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000).

## II. Breach of Contract

"New York follows the common law rule that, in interpreting a contract, the intent of the parties governs," and, therefore, "[a] written contract will be read as a whole, and every

part will be interpreted with reference to the whole." PaineWebber Inc. v. Bybyk, 81 F.3d 1193,

1199 (2d Cir. 1996); Westmoreland Coal Co. v. Entech, Inc., 794 N.E.2d 667, 670 (N.Y. 2003).

"A party's performance under a contract is excused where the other party has substantially failed

to perform its side of the bargain or, synonymously, where that party has committed a material

breach." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007).

"There is no simple test for determining whether substantial performance has been rendered and

several factors must be considered, including the ratio of the performance already rendered to

that unperformed, the quantitative character of the default, the degree to which the purpose

behind the contract has been frustrated, the willfulness of the default, and the extent to which the

aggrieved party has already received the substantial benefit of the promised performance."

Hadden v. Consol. Edison Co. of N.Y., 312 N.E.2d 445, 449 (N.Y. 1974).

    Where the intent of the contracting parties "is unambiguously conveyed by the

plain meaning of the agreement[], then 'interpretation is a matter of law,' and [a breach of

contract claim] may be resolved by summary judgment or Rule 12(b)(6) dismissal." Crane Co.

v. Coltec Indus., Inc., 171 F.3d 733, 737 (2d Cir. 1999). However, where questions exist as to

whether a party has performed or breached the agreement or whether a breach is material,

dismissal prior to fact discovery is inappropriate. See Boston Concessions Group, Inc. v.

Criterion Ctr. Corp., 606 N.Y.S.2d 696, 696 (1st Dep't 1994); Anderson Clayton & Co v.

Alanthus Corp., 457 N.Y.S.2d 578, 579 (2d Dep't 1982). "[I]n most cases, the question of

materiality of breach is a mixed question of fact and law—usually more of the former and less of

the latter—and thus is not properly disposed of by [judgment as a matter of law]." Bear, Stearns

Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d 283, 295 (S.D.N.Y. 2005).

The Co-Op Sponsor contends dismissal is appropriate because the plain language of the Purchase Agreement required Campbell to close once a Temporary Certificate of Occupancy was issued. Under the Co-Op Sponsor's logic, once that certificate was issued, Campbell had no alternative but to close. However, the Purchase Agreement did not relieve the Co-Op Sponsor of its obligation to provide a habitable apartment. Although Section 16.3 of the Purchase Agreement clearly states that "Purchaser shall be obligated to close . . . once a . . . Certificate of Occupancy is issued," that section contains an important proviso that incomplete construction in The Mark Hotel must "not prevent[] Purchaser's occupancy of the Suite." As such, the plain language of the contract indicates that the Co-Op Sponsor did not intend to sell, and Campbell did not intend to close on, a Suite which was uninhabitable.

Given the deficiencies Campbell alleges, her Suite was unfit for occupancy at the time the Co-Op Sponsor wanted to close, irrespective of the Department of Buildings "analysis." First, the alleged lack of heating, ventilation, hot water, garbage disposal, and secured entrances suggests that the Suite did not meet minimum standards for habitability. See Tower West Assocs. v. Derevnuk, 450 N.Y.S.2d 947, 951 (N.Y. Civ. Ct. 1982) ("Other cases have addressed the issue of the cumulative effects of a number of what may be termed 'minor' lapses[;] . . . a failure to provide, at various times, heat, hot water, elevator service, security (by failing to repair a broken front door lock), and garbage collection and disposal, amounted to a breach of the implied warranty of habitability" (citations omitted)). Moreover, it is plainly unreasonable to assert that an apartment on the fourteenth floor of a building undergoing significant renovations is usable when it is not reliably accessible by an elevator.

-8-

Even if the Suite's deficiencies had been corrected and The Mark Hotel was habitable by the final May 11 closing date, Campbell had no way of verifying that because the Co-Op Sponsor would not permit a second inspection. Although the Co-Op Sponsor relies on the Purchase Agreement's provision for an "inspection" to assert that only one was required, no language in the contract forecloses a second look, especially where the first "inspection" revealed a Suite in need of many o f the basic amenities. Notably, Section 17, which discussed the inspection, provided that the Suite would be "ready for inspection" at the time Campbell reviewed it. According to the Complaint, the Suite was far from ready and the deficiencies were not just minor "punch list" items. See, e.g., Gen. Ins. Co. of Am. v. K. Capolino, 983 F. Supp. 403, 413, 419 (S.D.N.Y. 1997) ("work at [the project] was complete and 'in the punch list stage'"); United States v. Manshul Constr. Corp., 940 F. Supp. 492, 496-97 (S.D.N.Y. 1996).

The Co-Op Sponsor's reading of the Purchase Agreement requires Campbell to accept the Suite based solely on its representations about the habitability of the Suite. However, because New York applies a "caveat emptor" rule to purchasers who do not inspect property prior to accepting it, see London v. Courduff, 529 N.Y.S.2d 874, 875 (2d Dep't 1988), Campbell had to request another inspection. Thus, it makes no sense to read the contract as prohibiting a second inspection when the caveat emptor rule imposes that obligation. Moreover, given the alleged disrepair of the Suite when Campbell first viewed it, the Co-Op Sponsor's refusal to allow another inspection and its haste in scheduling the closing are not consistent with the conduct of a party acting in good faith. See 511 West 232nd Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500-01 (N.Y. 2002) ("While the duties of good faith and fair dealing do not imply obligations 'inconsistent with other terms of the contractual relationship' they do

-9-

encompass 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" (citation omitted)); see also Carvel Corp. v. Diversified Mgmt. Group, 930 F.2d 228, 230 (2d Cir. 1991).

Further, Sponsor's refusal to provide assurances is perplexing in light of the acknowledged deficiencies and delays which have plagued The Mark Hotel. To the extent that Campbell had a right to request assurances in light of these problems, see Norcom Power Partners v. Niagara Mohawk Power Corp., 705 N.E.2d 656, 667-68 (N.Y. 1998), the reasonableness of her demand presents a question of fact.

Accordingly, because Campbell has alleged facts sufficient to support her breach of contract claims, Sponsor's motion to dismiss those claims is denied.

III. "Fraud" Claim

Sponsor avers that Campbell's third claim for relief sounds in fraud and fails to meet the heightened pleading requirements of Rule 9(b). Campbell counters that the claim is not for fraud but rather seeks a declaratory judgment that the deposit in escrow be released.

An escrow agreement and the agreement's conditions precedent are construed under ordinary contract principles. See MHR Capital Partners, LP v. Presstek, Inc., 912 N.E.2d 43, 47 (N.Y. 2009). "[A] condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" MHR, 912 N.E.2d at 47 (quoting Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 660 N.E.2d 415 (N.Y. 1995)). "Express conditions must be literally performed; substantial performance will not suffice." MHR, 912 N.E.2d at 47. New York's General

-10-

Business Law gives the Attorney General of New York power to resolve disputes over escrowed funds. See N.Y. Gen. Bus. L. § 352-e(2)(b).

The Purchase Agreement's escrow provisions include explicit terms regarding the disposition of the deposit. Campbell made the appropriate application to the Attorney General, who deferred decision because of this lawsuit. Because the escrowed funds are the centerpiece of this litigation, Campbell is correct to bring an application for their release with her breach of contract claims. However, it is not apparent to this Court why such an application should contain allegations that Sponsor's actions were "sham" or "collusory." These overtures of fraud are unnecessary for the relief Campbell requests. Accordingly, her third claim for relief is dismissed without prejudice to re-pleading the claim to describe her application for the release of escrowed funds.

CONCLUSION

For the foregoing reasons, Defendant Mark Hotel Sponsor, LLC's motion to

dismiss Plaintiff Roberta Campbell's First, Second, and Fourth Claims for relief is denied.

Sponsor's motion to dismiss Campbell's Third Claim is granted without prejudice to Campbell

repleading the claim in accord with this Memorandum and Order.

Plaintiff shall amend the Complaint by September 20, 2010. The parties are

directed to submit a joint proposed discovery schedule pursuant to Fed. R. Civ. P. 26(f) by

September 17, 2010. This Court will hold a conference on September 23, 2010, at 10:00 a.m.

Dated: September 3, 2010
     New York, New York

SO ORDERED:

                                  WILLIAM H. PAULEY III
                                     U.S.D.J.

*Counsel of Record:*

Amos Alter, Esq.
11 Riverside Drive
2NW
New York, NY 10023
*Counsel for Plaintiff*

Jeffrey Louis Braun, Esq.
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
*Counsel for Defendant*